UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Graphenteen,                                          Civil No. 15-2503 (MJD/FLN)

        Plaintiff,

    v.

                                  **REPORT AND**
Lucinda Jesson et al.,                                     **RECOMMENDATION**

        Defendants.

_____

Zorislav Leyderman for Plaintiff.
Jacob Kraus for Defendants Miles Balach and Maryjo Fales.
_____

     **THIS MATTER** came before the undersigned United States Magistrate Judge on

Defendants Miles Balach and Maryjo Fales's motion to dismiss (ECF No. 36). For the reasons set

forth below, the Court recommends that Defendants' motion be **GRANTED in part** and **DENIED**

**in part**.

## I. FINDINGS OF FACT

     Plaintiff John Graphenteen is involuntarily committed to the Minnesota Department of

Human Services ("DHS") in the Minnesota Sex Offender Program ("MSOP"). Am. Compl., ECF

No. 30. Defendants were supervisory employees at MSOP on December 9, 2009. *Id.* For the purpose

of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*,

299 F.3d 735, 738 (8th Cir. 2002). In his Amended Complaint, Graphenteen alleges that on

December 9, 2009:

> . . . Mr. Graphenteen was a patient at MSOP – Moose Lake, was 57-years-old, and
> was using his prosthetic leg. Mr. Graphenteen's prosthetic leg, at the time, was the
> very basic type which simply slipped over his stub.
>
> On December 9, 2009, Mr. Graphenteen was scheduled to attend a dentist
> appointment in Cloquet, MN, to have six teeth pulled from his mouth. Defendants

Balach and Fales were assigned to transport Mr. Graphenteen to and from the dentist appointment. Defendants Balach and Fales located Mr. Graphenteen and advised him that they were going to transport him to the dentist.

Mr. Graphenteen was initially strip-searched and then handcuffed and shackled prior to leaving the MSOP. Specifically, Mr. Graphenteen's feet, including the prosthetic leg, were shackled together with a short chain, which made it very difficult and unsafe for Mr. Graphenteen to walk with his prosthetic leg. Mr. Graphenteen's hands were also handcuffed and shackled to his waist in such a way that Mr. Graphenteen could not use his hands for balance.

The weather conditions that day were also problematic because it was cool and very icy.

. . .

Prior to leaving MSOP, Mr. Graphenteen told Defendants Balach and Fales that he was concerned for his safety due to the ice and shackling of his hands and legs and asked to be allowed to use a cane or a wheelchair during transport. Mr. Graphenteen also explained that he was worried about slipping and falling on the ice. Defendants Balach and Fales denied Mr. Graphenteen's request and told him to walk out to the transport van. If Mr. Graphenteen refused to be transported without a wheelchair, his dental appointment would be denied and he would have to instead suffer further dental pain and discomfort. With no other options available, Mr. Graphenteen agreed to be transported while handcuffed and shackled and without a wheelchair.

Mr. Graphenteen was then transported to the dentist where he was anaesthetized and then had six teeth pulled. After the dental procedure, Mr. Graphenteen was placed back inside the van and transported back to MSOP.

Once back at MSOP, Mr. Graphenteen was removed from the van and instructed to walk back inside the building. At this time, Mr. Graphenteen was still handcuffed and shackled . . . . In addition, although Mr. Graphenteen was anaesthetized only locally, Mr. Graphenteen was feeling dizzy and lightheaded after the dental procedure combined with anesthesia. Prior to exiting the transport van, Mr. Graphenteen complained to Defendants Balach and Fales about his safety and the unnecessary handcuffing and shackling, once again expressed his safety concerns due to the ice, and once again requested a wheelchair. Defendants Balach and Fales also knew that Mr. Graphenteen had six teeth pulled, that he was anaesthetized during the procedure, and that he was not feeling well. Defendant Balach told Mr. Graphenteen that, during transport, he requested from his supervisors J. Does 1-2 that a wheelchair be provided to transport Mr. Graphenteen back inside MSOP but that his request was denied. Upon information and belief, Defendant Balach told J. Does 1-2 that Mr. Graphenteen could benefit from a wheelchair and could sustain a

serious injury without a wheelchair, but Defendants J. Does nonetheless ignored the information and denied the request.

. . .

With no other options available, Mr. Graphenteen started to walk back towards the building as carefully as he could on the ice. As Mr. Graphenteeen walked, Defendant Balach was holding onto the shoulder area of Mr. Graphenteen's jacket but only on one side. Defendant Balach maintained a light grip on Mr. Graphenteen's jacket, and Mr. Graphenteen could feel that Defendant Balach only had a grip of the outer jacked [sic] but was not gripping Mr. Graphenteen shoulder or arm. Defendant Fales offered no physical assistance to Mr. Graphenteen as he walked back towards the building.

Prior to reaching the building, and as a result of the ice, the unnecessary handcuffing and shackling, and Defendants' failure to provide a wheelchair or a cane, Mr. Graphenteen slipped on the ice, lost balance, and collapsed face first to the ground. Defendant Balach's light grip was insufficient to prevent Mr. Graphenteen from falling and Defendant Fales could offer no assistance since she was not holding onto Mr. Graphenteen as he walked.

Because Mr. Graphenteen's hands were shackled to his waist, he could not use his hands to break the fall or cover his face, and he fell directly onto his face and head. Mr. Graphenteen immediately felt severe and excruciating pain all over his body[.]

. . .

. . . Mr. Graphenteen was severely injured and traumatized, suffering severe and excruciating pain, and bleeding profusely from his face. MSOP medical staff determined that Mr. Graphenteen was severely injured and needed to be immediately taken to an emergency room to be fully examined. Prior to being transported to the emergency room, Mr. Graphenteen was once again handcuffed to his waist and had his legs shackled. . . .

. . .

As a result of the incident described above, Mr. Graphenteen suffered severe physical injuries and permanent disabilities. Mr. Graphenteen suffered two fractures in his nose, a laceration above his right eye which required four stitches, a laceration on his nose which required four stitches, lacerations on his wrists and hands which later became infected, and severe headaches. All of these physical injuries took approximately two months to heal and have left Mr. Graphenteen's face permanently scarred and disfigured. Mr. Graphenteen also suffered permanent injuries to his head, neck, and face which cause ongoing feelings of dizziness, weakness, tiredness, numbness, memory loss, confusion, headaches, neck pain, eye pain, and blurry

3

vision. As a result of the fall, Mr. Graphenteen is also constantly shaky, jerky, unbalanced, and is always afraid and paranoid that he will fall and suffer severe injuries once again. Finally, as a result of the fall, Mr. Graphenteen has suffered severe emotional trauma, anguish, and distress.

ECF No. 30 ¶¶ 8–22. Graphenteen asserts claims against Balach and Fales and other John/Jane Doe MSOP supervisory employees for negligence (Count II) and under 42 U.S.C. § 1983 for violating his Eighth and Fourteenth Amendment rights (Count I). *Id.* ¶ 24. As embraced in Graphenteen's Amended Complaint, MSOP Policy 301.090 stated that patients were to be transported in full restraints "unless medical or physical limitations require[d] a reduction in restraints." MSOP Policy 301.090, "Transports," http://www.mn.gov/dhs.

Balach and Fales now move to dismiss Graphenteen's Amended Complaint. Mot. to Dismiss, ECF No. 36.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738. Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

### III. CONCLUSIONS OF LAW

#### A.    Negligence Claim (Count II)

Graphenteen does not contest that his claim for negligence is barred by the statute of limitations. Negligence claims are subject to a six-year statute of limitations. Minn. Stat. § 541.05. The underlying incident took place on December 9, 2009, and the statute of limitations expired on December 9, 2015. Service of summons was sent to Defendants on February 12, 2016 and returned executed February 22, 2016. Kraus Decl. Ex. 1, ECF No. 40. Therefore, Count II of Graphenteen's amended pleading must be dismissed for failure to state a claim upon which relief can be granted.

#### B.    Section 1983 Claim[1] (Count I)

Defendants Balach and Fales are entitled to qualified immunity unless Graphenteen pleads facts sufficient to demonstrate that they knowingly deprived him of a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Baribeau v. City of Minneapolis*, 596

---

[1]

To the extent Defendants' argue that Graphenteen's federal claim under § 1983 is time barred pursuant to Federal Rule of Civil Procedure 4(m), the Court observes that it has the discretion to extend the time for service for an appropriate period upon a showing of good cause. As Graphenteen was a civilly committed patient proceeding in this case *pro se*, and was, until recently, attempting to obtain counsel through the FBA *Pro Se* Project, the Court concludes good cause exists to extend the time for service. Fed. R. Civ. P. 4.

F.3d 465, 474 (8th Cir. 2010).

### 1.      Eighth Amendment Rights

The Eighth Amendment protects against cruel and unusual punishment. U.S. Const. amend VIII. The Eighth Amendment, however, does not apply to those who are civilly committed. *Semler v. Ludeman*, No. CIV 09-0732, 2010 WL 145275, at *22 (D. Minn. Jan. 8, 2010) ("Because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply."); *see also Rousseau v. Casteneda*, 08-CV-236 (DSD/JSM), 2008 WL 920448, at *2 (D. Minn. Apr. 3, 2008) (holding that the Eighth Amendment does not apply to civilly committed persons at the MSOP Moose Lake facility). Graphenteen, who is civilly committed at MSOP, does not have clearly established Constitutional rights under the Eighth Amendment. Defendants are entitled to qualified immunity insofar as Graphenteen asserts that they were deliberately indifferent to any of his rights arising under the Eighth Amendment. Therefore, Count I must be dismissed to the extent that it alleges claims under the Eighth Amendment.

### 2.      Fourteenth Amendment Rights

Graphenteen also alleges that Defendants acted with deliberate indifference to a substantial risk to his health and safety when they shackled his prosthetic leg, shackled his hands to his waist, ignored Graphenteen's requests for a cane or wheelchair, ignored Graphenteen's stated concerns for his safety, and made him walk from the transport vehicle on ice after he had received anaesthesia and endured major dental surgery.

The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. Substantive

due process protections under the Fourteenth Amendment include the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citing *Planned Parenthood v. Casey*, 505 U.S. 833, 847–49 (1992)). "The integrity of the individual person is a cherished value of our society." *Schmerber v. California*, 384 U.S. 757, 772 (1966); *see also In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 810–11 (S.D. Ohio 1995) ("The right to be free of state-sponsored invasion of a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process."). In *Rousseau*, the Eighth Circuit recognized that the due process clause of the Fourteenth Amendment provides protections to civilly committed patients. *Rousseau*, 2008 WL 920448, at *2. The Court concludes that Graphenteen had a clearly established constitutional right to be free from any risk to his health and safety under the Fourteenth Amendment.

Nevertheless, Defendants are still entitled to qualified immunity unless they acted with deliberate indifference of a substantial risk to Graphenteen's right to be free from any risk to his health and safety. Affording Graphenteen all reasonable inferences to be drawn from the facts alleged, the Court concludes that Graphenteen has sufficiently pled a claim that Defendants knew about excessive risks to his health and safety but disregarded them. *Logan v. Clarke,* 119 F.3d 647, 649 (8th Cir. 1997) ("To show deliberate indifference, [Plaintiff] must prove that the prison doctors knew of, yet disregarded, an excessive risk to his health."); *Turner*, 278 F.3d at 757 ("In reviewing a motion to dismiss, we construe the complaint liberally, taking all factual allegations as true."); *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738.

MSOP Policy 301.090 "require[d] a reduction in restraints" where there were medical or physical limitations. Graphenteen has plausibly alleged that Defendants failed to follow the policy that mandated a reduction in restraints where, as here, medical and physical limitations required it.

Contrary to Defendants' argument that reduction in restraints is an "exception" to the Policy, Plaintiff alleges that the Policy mandated the reduction because of physical limitations. For purposes of a motion to dismiss, facts in the Amended Complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738. Plaintiff therefore plausibly alleges that Balach and Fales failed to follow the Policy.

Balach and Fales should have known that shackling Graphenteen's prosthetic leg and handcuffing his hands to his waist before he had to walk out onto ice, presented an excessive risk of a fall and serious injury. This is evidenced by the Policy itself that requires modifications to the restraints for medical or physical limitations. Graphenteen has therefore pled sufficient facts to allege that Defendants knew of, and failed to abate, the risks to his health and safety.

## IV. RECOMMENDATION

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Balach and Fales's motion to dismiss (ECF No. 36) be **GRANTED in part and DENIED in part** as follows:

1. To the extent Defendants Balach and Fales seek to dismiss Count II of Plaintiff's Amended Complaint, the motion should be **GRANTED** and the claim **DISMISSED**.

2. To the extent Defendants Balach and Fales seek to dismiss Count I of Plaintiff's Amended Complaint pursuant to violations of his rights under the Eighth Amendment, the motion should be **GRANTED**.

3. To the extent Defendants Balach and Fales seek to dismiss Count I of Plaintiff's Amended Complaint pursuant to violations of his rights under the Fourteenth Amendment, the motion should be **DENIED**.

DATED: August 19, 2016                    *s/Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge

8

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before September 6, 2016, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by September 6, 2016 a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.