## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN GRAPHENTEEN, | Civil No.  15-2503 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| MILES R. BALACH and MARYJO K. FALES, | **ADOPTING THE REPORT** |
| *in their individual and official capacities*, and | **AND RECOMMENDATION** |
| J. DOES 1-2*, in their individual capacities*, | **OF MAGISTRATE JUDGE** |
| Defendants. | |

Zorislav R. Leyderman, **THE LAW OFFICE OF ZORISLAV R. LEYDERMAN**, 222 South Ninth Street, Suite 1600, Minneapolis, MN 55402, for plaintiff.

Eric V. Brown, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendants Miles R. Balach and Maryjo K. Fales.

The Minnesota Sex Offender Program ("MSOP") currently treats Plaintiff John Graphenteen at its facility in Moose Lake, Minnesota.  Graphenteen filed this action against Defendants Miles Balach, Maryjo Fales, and J. Does 1-2 – security officers and managers and MSOP – asserting claims for common-law negligence and violation of the Eighth Amendment, or alternatively, the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

Balach and Fales moved to dismiss all Graphenteen's claims.  United States Magistrate Judge Franklin L. Noel issued a Report and Recommendation ("R&R") recommending the Court grant in part and deny in part the motion.  Balach and Fales

filed timely objections to the R&R.  For the reasons set forth below, the Court will overrule the objections and adopt the R&R.

## BACKGROUND

At age 17, a doctor amputated Graphenteen's left leg below the knee.  (Am. Compl. ¶ 8, Jan. 21, 2016, Docket No. 30.)  At the time relevant to this case, Graphenteen relied on a "very basic type [of prosthetic leg] which simply slipped over his stub."  (*Id.*) On December 9, 2009, Graphenteen had an appointment to see a dentist and MSOP assigned Balach and Fales, MSOP security officers, to transport Graphenteen.  (*Id.* ¶¶ 6, 9.)   Prior to departure for this appointment, Balach and Fales handcuffed Graphenteen and shackled Graphenteen's legs, including his prosthesis, together.  (*Id.* ¶ 10.)  The leg shackles made Graphenteen nervous because the sidewalks were very icy. (*Id.* ¶¶ 10-11.)  At the time of the transport, MSOP Policy 301.090 (the "MSOP Policy") required security officers to transport patients in full restraints "unless medical or physical limitations require[d] a reduction in restraints."  (*Id.* ¶ 21 (alteration in original).) Graphenteen requested to use a cane or wheelchair during transport, but Balach and Fales denied the request.  (*Id.* ¶ 13).  Graphenteen expressed concern that he might slip and fall, but Balach and Fales instructed Graphenteen to walk to the vehicle or forgo his dental appointment.  (*Id.*)  Graphenteen reached the vehicle without incident and attended his dental appointment.  (*Id.*).

The dentist put Graphenteen under local anesthesia and extracted six teeth.  (*Id.* ¶ 14.)  After the appointment, Balach and Fales transported Graphenteen back to MSOP where Graphenteen once again faced a visibly icy sidewalk.  (*Id.* ¶¶ 15-16.)  In addition

to his concerns regarding the shackles on his leg and prosthetic, Graphenteen felt dizzy and lightheaded from the combination of local anesthesia and multiple tooth extractions. (*Id.* ¶ 15.)  Graphenteen once again expressed safety concerns about attempting to walk on the ice while restrained and requested a wheelchair.  (*Id.*)  Balach told Graphenteen that his supervisors, named J. Does 1-2 in this action, had been informed of – and denied – the request for wheelchair.  (*Id.*)

Graphenteen subsequently exited the vehicle and, while attempting to walk into MSOP with Balach holding his jacket, Graphenteen slipped and fell on the ice.  (*Id.* ¶¶ 17-18.)  With his hands cuffed and shackled to his waist, Graphenteen had no way to break the fall and fell directly onto his face.  (*Id.* ¶ 19.)  The resulting injuries to Graphenteen included:  two broken bones in his nose; cuts above his eye and on his nose which required stitches; and cuts elsewhere, which eventually became infected.  (*Id.* ¶¶ 20, 22.)  Graphenteen alleged he continues to suffer from these injuries and subsequent emotional distress.  (*Id.* ¶ 22.)

Graphenteen brought this action against Balach, Fales, and alleged supervisors J. Does 1-2.  Graphenteen alleged violations of the Eighth and Fourteenth Amendment pursuant to section 1983 and common-law negligence.  (*Id.* ¶ 23-28.)  Balach and Fales moved to dismiss all Graphenteen's claims.  The Magistrate Judge issued an R&R recommending the Court grant in part and deny in part the motion.  The Magistrate Judge recommended the Court:  (1) grant the motion to dismiss Graphenteen's negligence claim as time-barred; (2) grant the motion to dismiss Graphenteen's Eighth Amendment claim for failure to state a claim; and (3) deny the motion to dismiss Graphenteen's Fourteenth

Amendment claim because, at this stage, Balach and Fales are not entitled to qualified immunity.

Balach and Fales timely objected to the R&R, arguing the Magistrate Judge erred in finding they were not entitled to qualified immunity.  Balach and Fales also requested the Court dismiss the claims against J. Does 1-2.

## DISCUSSION

### I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at \*2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews *de novo* a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

Here, the Court reviews Balach and Fales motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint need not contain "detailed factual allegations," but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must plead facts that render a defendant's liability plausible – not merely possible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a complaint on a motion to dismiss the Court takes as true all allegations in the

complaint, which it construes in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010).

## II.   QUALIFIED IMMUNITY

Balach and Fales object to the Magistrate Judge's rejection of their qualified immunity defense to Graphenteen's Fourteenth Amendment claim.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not a defense to liability when (1) "the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right;" and (2) "the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful." *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016).

Balach and Fales do not contest the Magistrate Judge's finding that the Fourteenth Amendment "guarant[ee] of due process protects civilly committed" individuals, like Graphenteen, "from conditions that would be considered 'cruel and unusual punishment' for convicted criminals." *Rousseau v. Casteneda*, No. 08-236, 2008 WL 920448, at *2 n.1 (D. Minn. Apr. 3, 2008); *see also Vaughn v. Greene Cty.*, 438 F.3d 845, 850 (8th Cir. 2006) (applying "the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates" to pretrial detainees under the Fourteenth Amendment); *Youngberg v. Romeo*, 457 U.S. 307, 320-21 (1982)

(acknowledging the similarity between civilly-committed individuals and pretrial detainees).  And Balach and Fales do not disagree[1] that Graphenteen had "a right to safe and humane conditions of confinement" and that denial of such conditions could "result from [a security] officer's deliberate indifference to a prisoner's safety."  *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008).

Thus, the Court need only decide whether Graphenteen alleged a constitutional violation of his right to "safe and humane conditions of confinement."  Balach and Fales argue the Magistrate Judge improperly found they were not entitled to qualified immunity.  Specifically, Balach and Fales assert the Magistrate Judge improperly relied on Graphenteen's allegation related to the MSOP Policy to support the finding that Balach and Fales acted with deliberate indifference.

Applying the Eighth Amendment standard, the Supreme Court established that a prisoner may recover damages under section 1983 for a government officer's "deliberate indifference" as to certain deprivations if the prisoner meets two doctrinal elements, one

---

[1] Balach and Fales perfunctorily assert Graphenteen did not allege "any right [that] was 'clearly established.'"  (Defs.' Objs. to R&R at 4, Sept. 6, 2016, Docket No. 50.)  Balach and Fales appear to support this argument on the grounds that, because the MSOP Policy is Constitutional, any discretion exercised under the MSOP Policy does not violate the Constitution.  (*Id.* at 5-6); *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1033 (8th Cir. 2012) (holding the MSOP Policy does not violate the Due Process Clause).  But the existence of a Constitutional policy does not supplant Balach's and Fales' underlying obligations to use reasonable measures to ensure Graphenteen had "safe and humane conditions of confinement." *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008); *see also Moody v. Proctor*, 986 F.2d 239, 241-42 (8th Cir. 1993) (noting that a policy requiring certain restraints did not violate the Eighth Amendment **and** the correctional officers did not act with deliberate indifference in their implementation of the policy).  Any discretion Balach and Fales had in the implementation of the MSOP Policy did not supersede their underlying obligation to ensure Graphenteen was not subject to "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"objective" and one "subjective." [2] *Wilson v. Seiter*, 501 U.S. 294, 296-98 (1991).  First, a plaintiff must show he or she has suffered a "deprivation [that was] sufficiently serious" as an objective matter.  *Id.* at 298.  The Supreme Court has identified several categories of sufficiently serious deprivations, including deprivation related to "serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and being subjected to "a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, Graphenteen plainly alleged an objective, serious deprivation in that he was subjected to a substantial risk of harm in his transportation to and from the dentist. Graphenteen described himself as an amputee who required a prosthetic leg.  (Am. Compl. ¶ 8.)  Graphenteen asserted Balach and Fales shackled Graphenteen's legs, including his prosthetic leg, together making it difficult and unsafe for Graphenteen to walk.  (*Id.* ¶ 10.)  Further, Graphenteen highlighted that the sidewalks between MSOP and the vehicle were icy.  (*Id.* ¶ 11.)  Graphenteen noted that he asked Balach and Fales,

---

[2] As applied in the Eighth Amendment context, the Supreme Court made clear that "deliberate indifference" requires subjective knowledge:  no liability attaches "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. But as applied to a municipality in the Fourteenth Amendment context, "deliberate indifference" is purely objective:  "liability [may] be premised on obviousness or constructive notice." *Id.* at 841.  The Supreme Court has never specified whether "deliberate indifference" is subjective or objective in the context of a Fourteenth Amendment claim for civilly-committed individuals. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (discussing pretrial detainee and deliberate indifference for municipal prison officials).  Because the Court finds Graphenteen alleged sufficient facts to meet the subjective standard, the Court does not address which of the two standards applies in this instance.  *Id.* at 1118 (holding that "[d]espite [the] theoretical concern" of applying the subjective standard to pretrial detainees, the Eighth Circuit's practice of applying the subjective standard "in the Fourteenth Amendment context ha[d] been followed too long to be reconsidered"); *see also Holden v. Hirner*, 663 F.3d 336, 341 & n.3 (8th Cir. 2011) (employing and listing cases applying the subjective test to pretrial detainees).  But the Fourteenth Amendment may afford Graphenteen "greater protection" than a convicted criminal under the Eighth Amendment.  *Walton*, 752 F.3d at 1117; *see also Thornton v. U.S. Dep't of Justice*, 93 F. Supp. 2d 1057, 1064 (D. Minn. 2000).

on two occasions, to allow him to use a cane or wheelchair during transport because he feared for his safety.  (*Id.*  ¶¶ 13, 15.)  Further, on the return trip, Graphenteen alleged "feeling dizzy and lightheaded after the dental procedure combined with anesthesia."  (*Id.* ¶ 15.)  Reviewing these facts in the light most favorable to Graphenteen, Balach and Fales clearly witnessed Graphenteen's disability, dizziness, difficulty walking, and fear of falling on the ice.  Thus, objectively, Balach and Fales were aware of the risk of harm to Graphenteen.

For the second element, a plaintiff alleging deliberate indifference must show that the defendant "act[ed] with a sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298.  This standard is "extremely high" and "requires a mental state of 'more . . . than gross negligence.'"  *Saylor v. Nebraska*, 812 F.3d 637, 644 (8ᵗʰ Cir. 2016) (quoting *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8ᵗʰ Cir. 2014)).  "It 'requires a mental state akin to criminal recklessness."  *Id.* (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8ᵗʰ Cir. 2014)).

In this case, Graphenteen alleged more than negligence on the part of Balach and Fales.  Graphenteen's claim boils down to a failure on the part of Balach and Fales to provide Graphenteen a wheelchair – or otherwise provide an accommodation – to prevent Graphenteen from falling on the ice.[3]  An allegation that an officer failed to provide a wheelchair to an individual who obviously faced a risk of harm in the absence of a

---

[3] Further, although not raised here, MSOP is statutorily required to provide a disabled prisoner a non-frivolous accommodation unless MSOP conducts an individualized inquiry into the reasonableness of the requested accommodation.  *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 78 (2d Cir. 2016) (applying the Americans with Disabilities Act and the Rehabilitation Act).

CASE 0:15-cv-02503-JRT-FLN   Document 53   Filed 03/01/17   Page 9 of 10

wheelchair is enough to allege recklessness. *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8ᵗʰ Cir. 1980) (stating that plaintiff, a bedridden prisoner, sufficiently alleged an Eighth Amendment claim when prison officials refused to provide plaintiff a wheelchair); *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Further, while Balach and Fales correctly state that "[c]onduct by a government official that violates some state statutory or administrative provision is not necessarily constitutionally unreasonable," *Cole v. Bone*, 993 F.2d 1328, 1334 (8ᵗʰ Cir. 1993), regulations governing a facility's conduct often reflect constitutional protections and can add a "presumption of knowledge" to the acts of a facility's employees, *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531-34 (8ᵗʰ Cir. 2009). Here, the MSOP Policy is indicative of awareness on the part of MSOP officials that a reduction in restraints may be necessary to protect a civilly-committed individual's right to safe and humane conditions of confinement. As such, the MSOP Policy plainly warned Balach and Fales that certain accommodations were required if a detainee presented "**medical or physical limitations [that] require[d] a reduction in restraints**." (Am. Compl. ¶ 2 (emphasis added) (citation omitted).) Thus, the Magistrate Judge correctly considered the existence of the MSOP Policy in its analysis of whether Graphenteen alleged sufficient facts, taken as true, to show Balach and Fales acted with deliberate indifference.

For these reasons, the Court will overrule Balach's and Fales' objections, adopt the Magistrate Judge's R&R, and grant in part and deny in part Balach's and Fales' motion to dismiss.[4]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Balach's and Fales' objections [Docket No. 50] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated August 19, 2016 [Docket No. 49]. Accordingly **IT IS HEREBY ORDERED** that Balach's and Fales' Motion to Dismiss the Amended Complaint [Docket No. 36] is **GRANTED in part** and **DENIED in part** as follows:

1.     The motion is **DENIED** as to Graphenteen's claim under the Fourteenth Amendment.

2.     The motion is **GRANTED** in all other respects. These claims are **DISMISSED with prejudice**.

DATED:   March 1, 2017           _____s/ John M. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                  Chief Judge
                                        United States District Court

---

[4] Balach and Fales also ask the Court to dismiss the claims against J. Does 1-2. The Eighth Circuit has held it is improper for a court to dismiss an unnamed defendant at an early stage in litigation, when it appears likely that the defendant could be identified later through the process of discovery, court-ordered disclosure, or some other form of court intervention. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). As this case survives Balach's and Fales' motion to dismiss and will proceed to discovery, Graphenteen "must be given an opportunity to identify" J. Does 1-2. *See Butala v. Gerlicher*, No. 13-633, 2014 WL 241865, at *1 (D. Minn. Jan. 22, 2014).